State, Dixon, pros., v. Mayor, &c., of Jersey City.

THE STATE, DIXON, PROSECUTOR, v. THE MAYOR, &c., OF JERSEY CITY.

1. After a tax, and the penalties which have accrued by reason of its non-payment, have been swept away, before they are collected, by the repeal of the law which authorized their assessment and collection, the tax itself may be re-imposed by subsequent legislation, but the penalties for the past omission cannot be revived.
2. Penalties may be prescribed for future delinquencies in the payment of taxes, as part of the machinery by which government is enabled to collect them. The power to impose the forfeiture attaches as a necessary incident to the right to levy and collect taxes, and on no other ground can it be supported. The penalty thus provided is not taxation—it is merely a method of enforcing the payment of a tax. The imposition of penalties for past omissions, would be confiscation, not taxation.

On *certiorari.*

Argued at November Term, 1873, before Justices SCUDDER and VAN SYCKEL.

For the plaintiff, *Ransom.*

For the defendant, *Lewis.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The writ in this case brings up for review certain taxes and water rents levied for the year 1870, and the proceedings by virtue of which the property of the plaintiff was sold to pay and satisfy the same.

These taxes were assessed under the provisions of the charter of Jersey City, passed March 17th, 1870. (*Laws*

1870, *p.* 1170.) The seventy-second section of that act directed the collector, in case the tax remained unpaid after the 20th day of December, to compute interest thereon, after that date, at the rate of twelve per cent. per annum, and to add a penalty of one per cent., if not paid on the 10th of the following January, an additional one per cent., if not paid on the 1st of February, and an additional one per cent., if not paid on the 1st of March.

On the 31st day of March, 1871, before these taxes were paid, a new charter was passed for Jersey City, which made no provision for the collection of taxes theretofore assessed, and which, by its section one hundred and sixty-eight, repealed the charter of 1870, without saving any assessments made under it.

On the 26th day of December, 1871, the board of finance and taxation ordered the plaintiff's lands to be sold for these unpaid taxes, and on the 13th of March, 1872, they were sold for the amount of the taxes, with twelve per cent. interest thereon from December 20th, 1870, to the day of sale, besides the penalty of three per cent.

The case of *The Town of Belvidere* v. *Warren Railroad,* 5 *Vroom* 193, is distinguished from the present in this respect, that the act of 1862, under which the tax was there laid, had nothing to do with its collection, so that the force of the act was wholly spent before its repeal, while in this case the charter of 1870 provided the only machinery which existed for the collection of the burden imposed under it.

There can be no question that the penalty was swept away by the repeal of the charter of 1870, but whether the same rule will apply to the tax itself need not be now determined.

By a supplement to the charter of Jersey City, approved February 28th, 1872, it was enacted that nothing in the charter of 1871 should be held or construed to impair the right which the city had, at or before the passage of that act, to any taxes, water rents or assessments, theretofore levied, or to any penalties or interest theretofore accrued, and that section one hundred and fifty-one, of the act of 1871, should be held to apply as fully to taxes, water rents and assessments, levied

before its passage, as to those after its passage, and that all proceedings theretofore taken for the collection of such previously levied taxes should be as valid and effectual as if taken for the collection of taxes thereafter levied.

There is nothing in our fundamental law which prohibits the legislature from reviving the burden of this tax by retroactive legislation. It is not in any respect an unfair exercise of the taxing power.

It imposes upon a class of tax-payers the same tax which was legally and justly assessed against them under the act of 1870, the payment of which, by reason of an omission in the repealing act, could not be enforced.

If the supplement of 1872 had authorized the assessment of a tax precisely equal in amount to the one which had been assessed under the law of 1870, it would have been the ordinary exercise of the taxing power. The supplement substantially accomplishes the same object by reinstating the burden, dispensing only with the form of a re-assessment.

There is no inequity in making the enactment retrospective so as to reach the taxables of 1870. Property owners of that date shared in the benefits procured by such taxation in the advantage of schools, in the protection of courts of justice and the various objects for which municipal government is founded.

In *Shaw* v. *Dennis*, 5 *Gilm.* (*Ill.*) 418, the proceedings were sustained, where the statute directed that the commissioners, in determining who should be liable to pay the tax and the amount each should pay, were to be governed by the last assessment of taxable property in the county. Under this provision there might have been many instances where the individual would be assessed for property which he had ceased to own, but it is not essential to the legality of a tax that it be levied according to the rules of abstract justice. Absolute equality is unattainable.

The legislature must adopt some practicable system of apportionment uniform in its application throughout the taxable district. Every intendment should be made in support of

the power of the legislature to revive the burden of the tax itself. The power to validate by subsequent enactment an assessment made without any lawful authority, was fully recognized in *The State, Sharp, pros.,* v. *Apgar,* 2 *Vroom* 358.

But the attempt to revive and re-impose the penalty, presents a very different question. That this would be a taking of private property for public use, without just compensation, will not be denied, unless it can be justified under the power of taxation as a lawful mode of raising revenue. After the penalty was remitted, in the eye of the law, the delinquent was as free from it as if it had never rested upon him. It operated like a full pardon which releases the punishment and extinguishes the guilt.

The supplement now creates a penalty and makes the citizen amenable to it for a past omission, unpunishable before by any existing law. It cannot be claimed that the penalty which had accrued before the repealer, became an inseparable part of the debt due from the tax payer to the city, by reason of which it lost its distinctive character as a penalty and could be re-imposed as part of the tax. The obligation to pay the penalty was entirely removed from the tax payer by the repeal, and it is now sought to be revived as and under the name of a penalty.

Penalties may be prescribed for future delinquencies in the payment of taxes, as part of the machinery by which government is enabled to collect them.

The power to impose the forfeiture attaches as a necessary incident to the right to levy and collect taxes, and on no other ground can it be supported. The penalty thus provided is not taxation; it is merely a method of enforcing the payment of a tax, and it could not be sustained as a distinct measure for raising revenue, separable from the tax itself. The imposition of penalties for past omissions would be sanctioned by no such reason or necessity; it would not be in aid of the collection of the revenue, but would be arbitrary exaction from which the citizen could in no way escape. I can find in no text book nor in any adjudicated case, any

definition of taxation which will embrace a proceeding like the one involved in this controversy. It would be confiscation, not taxation.

There would be no limitation of the time for which such laws might be made to retroact, or the sum which might be exacted under them, save only the will of the law maker and the public exigency. Despotism itself could not employ a more arbitrary means of extortion.

Our legislature can exercise no such functions without conflicting with that clause of our constitution which is intended to guard private rights against oppression.

Even in the absence of any fundamental guarantee, such an use of legislative authority would be considered as contrary to the great first principles of the social compact. It is opposed to all reason and justice, and the very nature and spirit of our form of government would forbid us to believe that the people intended to entrust the legislature with any such power.

In taking this view of the case, the provisions in the federal and in our state constitution with regard to *ex post facto* laws, have not been overlooked. The Supreme Court of the United States has restricted the application of the term *ex post facto*, to criminal cases and to what may be called offences against the law.

This limitation was adopted in *Calder* v. *Bull*, 3 *Dallas* 386, and after being repeatedly recognized, was adhered to in the Missouri cases, reported in 4 *Wall.* 277. The failure to pay a tax is not a crime nor strictly an offence against the law, but a mere delinquency or omission. Being unable to find any case which enlarges the interpretation of this clause of the constitution, so as to comprehend delinquencies in the payment of taxes, I express no opinion upon it.

The sum for which the plaintiff's property was sold, included a computation of the penalty from the time the act of 1870 was repealed, to the date of the healing act of February, 1872. Even under the law as framed, I think this cannot be justified.

When part of a tax is illegal, all proceedings to collect it must be void, as it is impossible to separate what is legal from what is illegal. In my opinion the sale should be set aside, but inasmuch as the plaintiff has never, so far as appears, offered to pay the sum actually due, no costs will be allowed him.

Justice SCUDDER concurred.